474 P.2d 64

**Francis M. COCKE, Appellant,**

v.

**Joan H. COCKE, Appellee.**

**Nos. 1 CA–CIV 1085, 1104.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 2, 1970.

Rehearing Denied Oct. 1, 1970.
Review Denied Dec. 1, 1970.

Riggs & Riggs, by L. Alton Riggs, Tempe, for appellant.

Loretta S. Whitney, Phoenix, for appellee.

JACOBSON, Judge.

The consolidated appeals which are the subject matter of this opinion arose out of two separate post-divorce hearings on orders to show cause issued on petitions by plaintiff-appellee JOAN H. COCKE against defendant-appellant, FRANCIS M. COCKE.

In order to understand the basis of the consolidated appeals, a brief factual history of the parties, their litigation and dealings is required.

On January 24, 1964, while still married the parties entered into a "Property Division Agreement" which purportedly attempted to divide their separate and community property preparatory to a change in the marriage relationship. Insofar as pertinent here, this agreement provided:

"3. It is further understood that the wife shall forthwith place her share of said property in *an irrevocable trust* for the benefit of herself and said children * * * (emphasis added)

* * * * * *

"12. In the event either of said parties should seek a decree of separation or absolute divorce, then this agreement shall be incorporated by reference in any order and any decree which a Court might enter; however, it shall not be merged with said decree but shall survive same, and be binding forever on the parties. All expenses, including court costs and attorneys' fees arising out of any such separation or divorce action, shall be borne by the party incurring or contracting the same, and shall be paid from the separate income of such party."

At the time of this agreement, the property of the parties consisted primarily of agricultural lands and the agreement contemplated the continued use of the land as a unit, the cost of farming and profits therefrom to be shared proportionately.

Pursuant to this agreement, on August 7, 1964, plaintiff executed a Trust Agreement designating the First National Bank of Arizona as trustee.

Plaintiff conveyed all of her interest in the community real property to the trustee with herself as a life tenant and the remainder to the parties' children. The trust instrument itself provided:

"It is understood that this Trust is subject to *revocation or amendment* by joint action of [plaintiff], Trustor, and [defendant], (parents of the above-named children), at any time during their [lives] * * *" (emphasis added.)

Plaintiff subsequently filed an action for divorce against defendant and attempted to set aside the property settlement agreement and trust agreement previously executed by her. For this latter purpose, the remaindermen (children of the parties) together with the trustee were made parties to the divorce action. On March 17, 1967, a judgment of divorce was entered, partially upon stipulation of the parties, which provided, *inter alia:*

(1) That the property division agreement and the trust agreement were valid and in full force and effect.

(2) That the defendant was ordered to pay the plaintiff "for her support, maintenance and medical care" the sum of $1200.00 per month.

The decree further provided that this payment of $1200.00 per month was to be a "loan" by defendant to plaintiff and that defendant was entitled to be paid this loan from the trust established by plaintiff at the rate of $700.00 per month to be paid from income of the trust and $500.00 per month to be paid from the principal of the trust "to the extent funds are available from the principal and income account of said trust estate * * *" The monthly support payment by the defendant to the

plaintiff was to continue for an indefinite period.

Following the divorce of the parties, defendant desired to sell a portion of his property to James Stewart Company. In order to complete this sale a 50-acre parcel which was formerly community property of the parties had to be transferred. An undivided one-half interest of this 50-acre parcel was a portion of the land placed in trust by plaintiff and title thereto was held by the trustee. Plaintiff consented to the sale of her portion of the land and in order to consummate the sale, plaintiff and defendant on October 9, 1968, entered into "escrow instructions and supplemental sale and purchase agreement" as sellers with James Stewart Company as buyer. The contract and escrow instructions called for a total purchase price of $180,000.00 with a $20,000.00 down payment. In order to comply with the terms of the sale, plaintiff and defendant executed a letter dated October 10, 1968, to the First National Bank of Arizona, as trustee, directing the trustee "pursuant to the terms of * * * [the] trust agreement * * * to execute a deed" of plaintiff's interest in the 50 acres to the James Stewart Company, "for consummation of a sale of said property in accordance with escrow instructions executed by the parties and in accordance with further instructions to be furnished to said escrow agents * * *."

The trustee complied with this request and delivered the deed to the escrow agent as instructed. The plaintiff and defendant instructed the escrow agent that all security instruments and proceeds of the sale were to be forwarded to the First National Bank of Arizona as "collection agent" for the parties. The plaintiff and defendant for this purpose opened a checking account at First National Bank of Arizona which required the signatures of both parties on checks drawn on the account. To this account was deposited the $20,000 down payment called for by the sale.

The parties and their properties were in this status when the litigation which is the subject matter of these appeals arose.

On December 4, 1968, plaintiff filed her verified petition in the trial court seeking to hold the defendant in contempt for failure to pay plaintiff the sum of $2700.00 allegedly due as arrearage in support payments. This petition further alleged the existence of the $20,000 arising out of the sale of the property to James Stewart Company and that defendant wrongfully refused to deliver to plaintiff her proportionate share of these proceeds. Defendant's response to the petition and the order to show cause admitted the failure of defendant to pay the support arrearage but denied that his failure was willful and further denied that plaintiff was entitled to any proceeds from the sale of the property involved.

With the case in this posture, the contempt hearing was held on December 20, 1968, before the Honorable Jack D. H. Hays, Judge of the Superior Court of Maricopa County. The testimony at this hearing was concerned primarily with whether or not plaintiff was entitled to a portion of the proceeds of the escrow sale. No issue was raised as to the jurisdiction of the court to either hear the contempt citation or to determine the rights of the parties in the sale proceeds. By written judgment dated December 31, 1968, the court determined the following:

(1) That defendant was indebted to plaintiff in the sum of $2700.00 as and for arrearage in support and maintenance payments.

(2) That by the action of the parties, they had removed the 50-acre parcel from the operation of the trust and that plaintiff and defendant were entitled to their proportionate share of the proceeds of the sale of this 50-acre parcel free and clear of the trust.

(3) That each party should bear their own attorneys fees.

Defendant appealed from only that portion of the judgment of December 31, 1968 which decreed that plaintiff was entitled to her proportionate share of the proceeds of sale of the 50 acres, free and clear of the

trust. Plaintiff cross-appealed from that portion of this judgment holding each party was to bear the cost of their respective attorneys fees.

On March 12, 1969, plaintiff again filed a petition in the trial court alleging defendant had failed to pay the $2700.00 found due as support in maintenance under the December 31, 1968, judgment and had failed to pay plaintiff her proportionate share of the sale of the 50 acres. She further alleged accruing support payments in arrearage since the December 31, 1968, judgment and requested attorneys fees to defend the appeal from that judgment. Pursuant to a hearing on this petition the Honorable Ed W. Hughes, Judge of the Maricopa County Superior Court, entered judgment as follows:

(1) That defendant had failed to pay support in the sum of $2700.00 previously awarded by the court on December 31, 1968.

(2) That defendant had failed to make additional support payments to the plaintiff in the sum of $3600.00.

(3) That plaintiff should be awarded $4500.00 as her share of the $20,000.00 held in the collection account from the sale of the property.

(4) That plaintiff was awarded attorneys fees in the sum of $1500.00 for purposes of appeal.

Defendant also appealed from all portions of this judgment.

Defendant raises numerous issues on appeal which may be summarized as follows:

(1) Did the trial court have jurisdiction to issue orders for contempt against the defendant?

(2) Were the proceeds of the sale of the 50 acres impressed with the trust of August 7, 1964?

(3) Is plaintiff entitled to her attorneys fees on appeal?

Plaintiff on her cross-appeal raises the propriety of the court's order denying her attorneys fees in the hearing of December 31, 1968.

Defendant raises for the first time on appeal the jurisdiction of the trial court to entertain the order to show cause hearing held in December, 1968. This right is questioned on the basis that the "alimony" payments required by the original decree of divorce was a contractual obligation arising out of a division of the property of the parties and therefore was not subject to enforcement by contempt proceedings, *citing* Wright v. Stidham, 95 Ariz. 316, 390 P.2d 107 (1964), and Stone v. Stidham, 96 Ariz. 235, 393 P.2d 923 (1964).

We note initially, that this defense was not raised at either the December, 1968, hearing or the March, 1969, hearing before the trial court. We further note that defendant did not appeal that portion of the trial court's judgment of December 31, 1968, finding him in arrearage of support payments to plaintiff in the sum of $2700.00 and this portion of the judgment was allowed to become final. However, since defendant treats this argument as a "jurisdictional" defect and without determining whether or not such a defense is in fact jurisdictional, we prefer to treat the defense on its merits.

■■ The *Stone* case, *supra*, makes it clear that when payments to a wife under a decree of divorce, although labeled "alimony" are in essence payments for her interest in community property, such payments are in fact a contractual debt which may not be enforceable by contempt proceedings and imprisonment. However, it is equally clear that if the payment to the wife arises out of the (legal) obligation of support owed by a former husband to his former wife, such an obligation may be enforced by contempt proceedings. Collins v. Superior Court, 48 Ariz. 381, 62 P.2d 131 (1936).

■ In the present case, there is no question the parties in 1964 made a division of their community and separate property. While that agreement was attacked in the divorce proceedings, its validity was upheld. This 1964 agreement was silent as to the support of the wife. The decree of divorce

entered in 1967 specifically provided that "the defendant, FRANCIS M. COCKE be, and he hereby is, ordered and directed to pay to the plaintiff, JOAN H. COCKE, for her *support, maintenance and medical care,* the sum of $1200.00 per month \* \* \*." While the decree further provided that defendant was entitled to reimbursement of these sums from plaintiff's trust estate, the decree was clear that this obligation to support was a continuing one, regardless of the existence of funds in the trust estate to reimburse defendant for these payments. We therefore hold that the obligation of defendant to support the plaintiff under the 1967 decree of divorce is one arising out of the marital relationship and is not a debt arising out of the division of community property. As such a marital obligation, the decree of support is enforceable by contempt proceedings.

We are not called upon, nor do we express, any opinion as to whether the defendant might be entitled to any reimbursement from any other source after depletion of the trust estate.

Defendant's main contention both in the trial court and on appeal is the alleged error of the court in holding the proceeds of the sale of the 50 acres to be free and clear of the trust insofar as plaintiff's former one-half interest is concerned. The attack upon this holding is two-pronged:

(1) That the property settlement agreement between the parties which was held to be valid and in full force and effect by the decree of divorce required plaintiff to set up an irrevocable trust and therefore the parties could not by their acts exclude the trust real property from its effect, and

(2) That the court, not having jurisdiction of the remaindermen under the trust in the contempt hearing could not make any valid adjudication affecting the trust res.

As to the first contention, defendant overlooks that in the same paragraph of the 1967 Decree of Divorce holding the property settlement agreement valid and in full force and effect, the decree likewise held valid and in full force and effect the trust agreement which by its terms could be revoked by the joint action of the plaintiff and defendant. Thus, the judgment held both instruments valid and in full force and effect while their terms in one important aspect appear to be in conflict.[1]

We need not, however, decide as a bare legal proposition which of these two judicially sanctioned instruments has priority. The parties, by their conduct, have decided this issue.

█ First it should be noted that the trust agreement was the subject of extensive litigation in the original divorce proceedings, and there is no contention by defendant that he was not aware of its terms.

After the decree of divorce was entered and when defendant desired to sell a portion of his separate property including a portion in which he held an undivided one-half interest with the trustee, defendant prevailed upon plaintiff to execute a letter to the trustee requesting the execution of the deed to defendant's buyer, without any indication to the trustee that the proceeds of this sale would be held in trust. One of the inducements made by defendant to plaintiff, testified to by plaintiff, was that the funds received from the sale would be free and clear of the trust. The sales contract and escrow instructions did not in any manner reflect the interest of the trustee in a portion of the property sold. After the sale was completed the parties made arrangements with the First National Bank as a collection agent to receive the proceeds of the sale of the property and to this end

---

1. While at first blush these two instruments appear to be in conflict as to revocability, in fact as far as the plaintiff is concerned they are not. In the PSA plaintiff agreed to make the trust irrevocable. Plaintiff complied with this agreement for she alone cannot revoke the trust agreement, this can only be done by the joint action and concurrence of the defendant. Thus as to the plaintiff alone, the trust is irrevocable.

opened a checking account with that institution which required the signature of both plaintiff and defendant to withdraw funds therefrom. Again, this account does not in any manner refer to an underlying interest of the trustees in the proceeds of this sale.

In such a case, where defendant, having knowledge of the revocable nature of the trust, has acted in a manner to cause a trustee to divest itself of its interest in a portion of that trust res in reliance upon the revocable feature of the trust, has purportedly induced others to act in reliance upon the revocable nature of the trust, and all of the defendant's acts after the fact are consistent with the trust being revocable, we hold that defendant is estopped to now assert that the trust is now irrevocable under the provisions of the property settlement agreement entered into between the parties in 1964. *See* City of Tucson v. Koerber, 82 Ariz. 347, 313 P.2d 411 (1957); Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354 (1957).

Having determined that defendant is estopped to assert the irrevocability of the trust, his second defense that the court could not exercise jurisdiction over the res of the trust without notice to the minor beneficiaries must also fail. Insofar as the beneficiaries of this trust are concerned, their rights are to be determined by the trust instrument. The trust clearly provides for its revocation by the joint action of plaintiff and defendant and therefore notice to them is not required. Dreyer v. Lange, 74 Ariz. 39, 243 P.2d 468 (1952).

Defendant's last contention that plaintiff's attorneys fees on appeal should not be allowed is based upon his argument that the "alimony" payments to the plaintiff arose out of a contract and the court may not award attorneys fees in a contract action unless the parties have agreed in writing to do so. We have previously decided in this opinion, that this argument is fallacious, and that the obligation of defendant to plaintiff arose out of the "marital relationship." Therefore, defendant's position as to attorneys fees is not sustainable.

Plaintiff in her cross-appeal would have this court review the circumstances of the parties after the hearing in determining whether or not the court abused its discretion in not allowing attorneys fees in the December, 1968, hearing. At the time of the December, 1968, hearing, the court, by its judgment had made available to plaintiff from defendant approximately $7,700.00. We are sure that the trial court took this into consideration in denying plaintiff's attorneys fees for an order to show cause hearing lasting approximately one hour. Admittedly, defendant failed to pay plaintiff these sums, however we hold that we may not consider this failure in arriving at our determination as to whether or not the court abused its discretion at the time of the December, 1968 hearing. We are also sure that this failure of the defendant to pay plaintiff these sums, was taken into consideration by the trial court in awarding attorneys fees on appeal at the March 1969 hearing.

We therefore find no abuse of discretion by the trial court in December, 1968, in disallowing attorneys fees to plaintiff at that time.

The judgments of the trial court entered on December 31, 1968, and on March 15, 1969, are affirmed.

EUBANK, P. J., and HAIRE, J., concur.