494 P.2d 756

Francis M. COCKE, Appellant,

v.

TRANSAMERICA TITLE INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Appellee.

No. 1 CA–CIV 1627.

Court of Appeals of Arizona,
Division 1,
Department B.

March 20, 1972.

Review Denied June 27, 1972.

Johnson, Shelley, Roberts & Riggs by L. Alton Riggs, Jr., Mesa, for appellant.

Browder, Gillenwater & Daughton by Powell B. Gillenwater, Phoenix, for appellee.

JACOBSON, Judge.

This is the type of appeal in which an appellate court finds it exceedingly difficult to write a concise opinion. Appellant's opening brief, which ran to sixty-five pages, wholly fails to comply with Rule 5(b). Rules of the Supreme Court, 17 A.R.S., in that there is no short and clear statement disclosing the nature of the action, the issues, and how these issues were decided. Nor is there a concise statement of the ultimate facts of the case material to the determination of these issues. Moreover, the questions presented for review, being eight in number, fail to follow the spirit of the rules by being short and concise and omitting unnecessary detail or even informing the Court of the problems involved.[1] However, we feel constrained to wade through

1. For example, question 8 presented for review by appellant reads:

"8. Paragraphs 8, 9 & 10 of the Fine Print Instructions.

"The questions of (1) the force of paragraphs 8, 9 & 10 upon and subsequent to any breach of trust or of the escrow agreement by escrow agent, (2) their effect upon and subsequent to the filing of Buyer's Complaint, and (3) their force and effect as affected by public policy."

the morass of appellant's prolix arguments and decide this appeal on its merits.

This appeal rises out of an action brought by James Stewart Company [2] against appellant Francis M. Cocke and others, seeking the specific performance of a contract of sale of approximately 124 acres of land located near the Black Canyon Freeway in Maricopa County and owned by appellant and his ex-wife, Joan H. Cocke.[3] Appellant in that action filed a counterclaim against appellee, Transamerica Title Insurance Company, which was employed as an escrow agent to handle the sale, seeking damages for Transamerica's alleged gross negligence and breach of fiduciary duty in handling the escrow transaction. Transamerica answered this counterclaim and filed a counterclaim of its own against appellant seeking attorney's fees and costs incurred in defending appellant's counterclaim. Following extensive discovery, Transamerica moved for summary judgment both on appellant's counterclaim against it and on its own counterclaim for attorney's fees and costs against appellant. Appellant countered by moving for summary judgment in his own favor on his counterclaim against Transamerica. After argument and a hearing on the reasonableness of attorney's fees, the trial court granted both of Transamerica's motions for summary judgment and awarded attorney's fees to Transamerica in the sum of $4,568. Following denial of appellant's post-judgment motions he has appealed.

This Court is initially faced with a "jurisdictional" attack raised by appellant. At the time of oral argument, appellant contended that this appeal should be dismissed because the trial court lacked jurisdiction to enter the judgment appealed from. Because this issue had not previously been raised in this case before this Court, appellant was granted leave to file a supplemental memorandum on this issue and appellee

was granted time to file a response thereto. Appellant has filed a twenty-three, legal-size page, memorandum in this Court which, distilled to its bare bones, contends the trial court lacked jurisdiction in this matter for the following reasons:

(1) Because Transamerica's counterclaim for attorney's fees was based upon only one provision of the escrow instructions—granting the escrow agent attorney's fees—"it is elemental that a party to a contract cannot come into court seeking the enforcement of only its claimed rights under selected provisions of the contract, without regard to its obligations under the other provisions also incorporated into its pleadings, since such relief is beyond the power or jurisdiction of the court to grant." [4]

(2) Transamerica did not join the other party to the escrow instructions in its counterclaim for attorney's fees and such other party was "indispensable".

(3) Since Transamerica's counterclaim did not join the minor beneficiaries of a trust formed by Mr. and Mrs. Cocke, the trial court was without jurisdiction to proceed.

Turning to the last "jurisdictional" argument first, as we have previously pointed out in a footnote, our decision in Cocke v. Cocke, *supra*, held that the interest of Mrs. Cocke in the real property involved in this sale was not subject to any trust. To argue at this late date that the beneficiaries of that trust still have an interest in the disposition of this real property and therefore are indispensable parties, not only taxes the patience of this Court but calls into serious question the advocacy of appellant's counsel.

The appellant's first "jurisdictional" ground is also without merit. There is no contention that the trial court did not obtain personal jurisdiction over appellant

---

2. James Stewart Company is not a party to or involved in this appeal.

3. This Court has previously, in Cocke v. Cocke, 13 Ariz.App. 57, 474 P.2d 64 (1970), determined that Mrs. Cocke's interest in this real property was not subject to an alleged trust. A petition for review of that case was denied by the Supreme Court on December 1, 1970.

4. The above quote is from appellant's supplemental brief on the issue of jurisdiction.

and appellee and that they were not properly before the Court. There is likewise no contention that the trial court lacked subject matter jurisdiction to determine whether Transamerica was guilty of negligence or breach of fiduciary duty in administering the escrow agreement. If we understand appellant's argument correctly, it is that if a person is a party to a contract, one provision of which allows a prevailing party attorney's fees in any litigation arising out of that contract, the party to that contract may not sue under that provision alone because to do so in some manner fails to consider all the other provisions of the contract and thus would abrogate those other provisions which the court has no jurisdiction to do. To state the proposition is to show its preposterousness. Admittedly, the trial court might err in determining that a party is entitled to attorney's fees, but "error" and "jurisdiction" are two wholly separate and distinct concepts, and jurisdiction is not involved in the foregoing situation.

▇ Appellant's next argument that the buyers under the escrow instructions were "indispensable parties" to Transamerica's counterclaim against appellant is also without merit. Transamerica's claim for attorney's fees arose out of and only out of defending appellant's alleged claim against it. It was appellant and only appellant who caused Transamerica to incur the attorney's fees claimed. In such circumstances neither the buyers nor any other party to the escrow agreement would even be proper parties to Transamerica's claim for attorney's fees, let alone indispensable parties.

For the foregoing reasons we hold the trial court had jurisdiction to determine the issues placed before it.

This then, at long last, brings us to the merits of appellant's appeal and the claimed error of the trial court in granting Transamerica's motion for summary judgment. To adequately understand this proceeding a rather detailed factual basis is necessary.

On October 9, 1969, appellant and Joan H. Cocke entered into a contract to sell to James Stewart Company, or its nominee, 124 acres of land situated in Maricopa County. The purchase price of this property was $548,000. In order to complete the sale an escrow was opened with Transamerica. A portion of this 124-acre-sale included a 50-acre parcel which was owned jointly by appellant and his ex-wife, Joan H. Cocke, the appellant having title to the balance of the property in his name alone. The exact description of all the property was not certain and therefore the escrow instructions provided that appellant was to have a survey performed and the purchase price of the property was to be adjusted up or down, depending upon the acreage disclosed by the survey.

Across this property lay an irrigation canal known as the "Jenkins Ditch" title to which was not claimed by the appellant. However, when the surveyor employed by appellant rendered his metes and bounds description of the property, the length of the Jenkins Ditch was included within the description as parcels 1–A and 2–A. Buyers' counsel in preparing a deed to the property utilized the description supplied by appellant's surveyor and included within the deed a description of parcels 1–A and 2–A. When this deed was submitted to appellant, he refused to execute the same, claiming that he had no title to these parcels. Upon this being called to Transamerica's attention, a new deed deleting the disputed parcels was prepared which appellant subsequently also refused to sign.

At the inception of the escrow, the buyers agreed to pay to the sellers the sum of $20,000 direct to sellers and outside the escrow. This sum was paid. In addition, buyers were to make a down payment in escrow of $44,000 before a specified date, which was done. Because of delays, the escrow did not close on the date contemplated (December 15, 1968) and apparently appellant became pressed for cash. He therefore prevailed upon buyers to release from the cash down payment in escrow an additional $20,000. This was accomplished by an amendment to the escrow instructions signed by both appellant and buyers and

dated January 10, 1969. This amendment provided in part "[i]t being understood that you [Transamerica] are in no way to be held liable for the return of these funds should this escrow fail to close for any reason whatsoever."

In connection with this accommodation of appellant, buyers' counsel, in order to protect his client should the escrow not close, prepared a note in the sum of $40,000 ($20,-000 representing the initial payment made outside of escrow and $20,000 representing the advance made from escrow funds) and a mortgage securing the same on the property to be sold. These were presented to appellant for execution in the office of Transamerica at the time appellant received the $20,000 check from Transamerica· from the escrow. After execution by appellant, possession of this note and mortgage was taken by buyers' counsel. At the time judgment had been entered in this matter no demand had been made on the note, and the mortgage had not been recorded. The escrow instructions to Transamerica were silent as to this note and mortgage.

It also appeared that a small triangle of land covered by the sale had an alleged title defect in it which Transamerica refused to insure. Based upon a sales figure of $548,000, this small triangle had a value of $6.

The escrow instructions, which were dated October 9, 1968, provided that the balance of the purchase price in the approximate sum of $484,000 was to be evidenced by a promissory note and secured by a purchase· money mortgage. The note was to be paid in annual payments of $64,-000 each, plus interest, the first payment to be due on January 2, 1969. However, because of a dispute which existed between appellant and his ex-wife, Transamerica received conflicting instructions from appellant and Mrs. Cocke as to how Mrs. Cocke's interest in the real property was to be handled. (At this time our decision in Cocke v. Cocke, *supra*, had not been rendered. However, the trial court, which we

subsequently affirmed, had rendered judgment.) Because of this dispute between the sellers as to how notes and mortgages would be drawn to reflect their respective interests, and because of delays in obtaining the survey, the date for closing of the escrow came and passed.

On March 5, 1969, appellant, on forms provided by Transamerica, gave notice to the buyer of cancellation of the escrow. This notice in part provided that "[t]he undersigned, therefore, delivers this notice to the Escrow Agent demanding that if Buyer has not complied with all the terms of said escrow instructions within thirteen days from the date of receipt of this notice by said Escrow Agent, said escrow shall thereupon become cancelled."

By a letter dated the same date, buyers' counsel sent to Transamerica two checks in the sum of $32,000 each (a total of $64,-000, representing the first annual payment), a mortgage covering Mrs. Cocke's interest in the 50-acre parcel, a mortgage covering appellant's interest in the 50-acre parcel, a mortgage covering the balance of the property and three notes reflecting the above interests of the sellers. The two $32,000 checks were made payable upon endorsement to appellant and Mrs. Cocke, respectively. In addition, the mortgages were reduced by the amount of this first annual payment.

This letter stated in part as follows:

"Gentlemen:

"There has previously been submitted to you the down payment due in October 1968 on the above escrow. This down payment in the sum of $44,000 was the balance remaining after payment of $20,000 which was paid to the sellers outside of escrow. Twenty thousand dollars of the $44,000 on deposit was also paid directly to Francis M. Cocke to apply on his share of the down payment. It is my understanding that Mr. and Mrs. Cocke have reached an agreement as to the way these funds are to be distributed and also an agreement as to the distribution of the $64,000 payment which will

be due upon this escrow being closed. According to the information, we have received, they have agreed to a split of $32,000 to each of the parties. The only matter which seems to be in contention is whether Mrs. Cocke will receive the payment directly or whether the payment will be set up in some kind of trust agreement. It is apparently the position of Mrs. Cocke that the payment is to be made to her directly and it is apparently the position of Mr. Cocke that the payments are to be maintained in some sort of trust arrangement. The buyers are not directly concerned with how Mr. and Mrs. Cocke make this division; however, the buyers are vitally concerned that some arrangement be made so that the escrow can close and a means be provided for crediting sums to the purchase price and a means provided for obtaining parcel releases as required by the buyers.

\* \* \* \* \* \*

"As stated previously, the buyers do not want to become involved in any conflict between the sellers and do not desire to take a position in any way regarding their internal handling of the payments. In conformity with the instructions which have been received and the contract, there is herewith submitted to you three (3) promissory notes and three (3) mortgages which reflect the balance due to the sellers after the annual payment which is submitted herewith. If the sellers do not desire to have the mortgages and promissory notes in the sums set forth herein, or have any changes which are acceptable to the title company and to the First National Bank and which do not in any way affect buyers' rights under the agreement, buyers will be glad to cooperate in any way in accomplishing the result desired by the sellers."

Following receipt of this letter and the enclosures, Transamerica on March 10, 1969, advised appellant by letter as follows:

"Enclosed is a letter that we have received from the buyer relative to the above numbered escrow. Also, this is to acknowledge that we have received the various checks and documents mentioned in said letter.

"It appears to the undersigned that the buyer has done everything that is required of him to close this escrow."

Appellant subsequently refused to close the escrow. Transamerica has held all the documents and funds and has refused to release any instruments to either party. The suit for specific performance brought by the buyers followed.

The appellant, we believe, has presented the following issues for our consideration:

(1) Whether the letter of March 10, 1969 from Transamerica advising that it appeared buyers had complied with the escrow, constituted a breach of fiduciary duty or amounted to gross negligence and attempted fraud?

(2) Whether Transamerica's failure to hold in escrow the $40,000 note and mortgage signed by appellant to buyers amounted to a breach of its fiduciary relationship or gross negligence?

(3) Whether Transamerica in presenting to appellant a deed containing a description prepared by appellant's surveyor committed gross negligence, attempted fraud, and a breach of its fiduciary duty?

(4) Whether appellant stated a cause of action against Transamerica for its failure to insure the triangle parcel?

(5) Whether any action of Transamerica caused damage to appellant arising from appellant's notice of cancellation dated March 5, 1969?

(6) Whether Transamerica was liable and appellant damaged by its refusal to release documents from escrow?

(7) Whether Transamerica was entitled to attorney's fees and costs on its counterclaim?·

Appellant's first contention that the letter from Transamerica dated March 10, 1969 advising appellant that it appeared buyers had complied with the escrow instructions constituted a breach of Transamerica's fiduciary duty or amounted to negligence, presupposes that (1) buyer had not complied with its obligations under the escrow, and (2) that the letter was an unconditional ratification by Transamerica that buyer had so complied. If either of these suppositions is untrue, the trial court was correct in granting summary judgment in Transamerica's favor on this portion of appellant's counterclaim. It therefore only becomes necessary to discuss the second supposition to dispose of this contention.

It is clear from buyers' letter which was enclosed in the letter of March 10, 1969, that buyer was in a quandary as to how the note and mortgage reflecting appellant's and Mrs. Cocke's interest in the property were to be handled. Acting upon the best information available at that time (the judgment of the trial court adjudicating those interests), the buyer supplied the escrow agent with checks, notes and mortgages based upon that information. However, the buyers were clear that the instruments submitted were not to be considered final as buyers advised all parties that "if the sellers do not desire to have the mortgages and promissory notes in the sums set forth herein, or have any changes which are acceptable to the title company and to the First National Bank and which do not in any way affect buyers' rights under the agreement, buyers will be glad to cooperate in any way in accomplishing the results desired by sellers."

Transamerica, being faced with conflicting demands by the sellers and a notice of cancellation by appellant, by its letter of March 10, 1969 advised all parties of the receipt of the documents sent by buyers and further advised that it "appeared" that buyers were in compliance with the demands of the escrow—execution of notes and mortgages representing the balance of the purchase price.

At this juncture, it is well to point out that at this time serious dispute existed between appellant and his ex-wife as to whether her interest in the property was subject to a trust held by First National Bank. Admittedly, the notes and mortgages prepared by buyers were in conformity with Mrs. Cocke's contention that the trust had been dissolved; however there is nothing in buyers' letter which would indicate that this conformity was inflexible or that Transamerica was unwaveringly committed to this position. The most that can be said for the March 10, 1969 letter is that Transamerica had received notes, mortgages, and checks required by the escrow to be delivered by buyers, and that acting upon the same information available to buyers (the trial court's judgment) these *appeared* to be in order. Under such circumstances this letter, as a matter of law, could not constitute a breach of Transamerica's fiduciary relation or amount to negligence, and we so hold. The trial court was correct in granting summary judgment on this portion of appellant's claim.

We might note that appellant makes several arguments to the effect that the buyers had not complied with the escrow because it delivered mortgages reduced by the first annual payment, which was also tendered, and this was not called for by the escrow instructions and that the letter from buyers also demanded title to the Jenkins Ditch. However, even if buyers' tender of documents did not place them in compliance with the escrow instructions (we specifically make no holding in this regard)[5], the letter of March 10, 1969 from Transamerica cannot be read as an absolute ratification of buyers' compliance which would give rise to a cause of action against it in appellant's favor.

5. The litigation between buyers and sellers for specific performance and the issue of whether buyers are entitled thereto is still pending.

■ The second claim of appellant that Transamerica breached its fiduciary relationship and was guilty of negligence is based upon Transamerica's failure to hold in escrow the $40,000 note and mortgage executed by appellant, representing the cash advances made to appellant prior to and during the escrow. However, in order for appellant to show that Transamerica breached its duty as to these documents he must first show the existence of that duty. This appellant has failed to do. Nowhere do the written documents show that this note and mortgage were to be placed in the control of the escrow agent. The escrow instructions are completely silent as to them. Moreover, there is not even oral testimony that Transamerica was instructed by any party to take possession of the instruments pending the closing of the escrow. As a matter of fact, appellant's real estate agent through deposition testimony stated that this entire transaction—the appellant obtaining $40,000 and the securing of the same by a note and mortgage—was to be handled de hors the escrow. The appellant having failed to show any duty on behalf of Transamerica as to these documents, his action for breach of that duty either on a theory of a fiduciary relationship or on a theory of negligence must fail. We therefore hold that the trial court was correct in granting summary judgment in favor of Transamerica on this portion of appellant's claim.

■ The third claim of appellant against Transamerica deals with its presenting a deed to him containing a description of land which appellant did not own. First, there is no contention that Transamerica itself prepared this deed, it being admitted that it was prepared by buyers' attorney. Second, there is no contention that the description did not exactly follow the description supplied by appellant's surveyor. In essence, Transamerica's contact with this deed was to tender to appellant a document placed in escrow allegedly conveying the property which was the subject matter of the sale and which did so in conformity with a survey prepared by an employee of appellant. Assuming, without deciding, that Transamerica had a duty to obtain a deed which correctly described the land sold, it had the legal right to accept a deed description based upon a survey prepared by an engineering firm employed by the appellant-seller himself. Paso Builders, Inc. v. Hebard, 83 Nev. 165, 426 P.2d 731 (1967).

Moreover, appellant has failed to show how Transamerica's action in *tendering* the deed injured or damaged appellant in any manner. Appellant refused to execute this instrument; it never was placed of record; there is no showing that third persons in reliance upon the instrument are making any claim for damages against appellant; and there is no evidence that it became anything different from what it was on tender—a deed without life, not bearing the grantor's signature.

We hold the trial court correctly granted summary judgment in favor of Transamerica on this portion of appellant's claim.

■ Appellant's fourth claim is based upon Transamerica's refusal to insure a triangular piece of ground having a $6 value and which is referred to in appellant's brief as the "De Minimis Triangle". Again, appellant's claim in this regard is based upon a duty on behalf of Transamerica to insure the property involved, and again appellant has wholly failed to show the existence of such a duty. Appellant has failed to direct this court's attention to any contractual obligation or any theory of law that requires a title insurer, under penalty of breach, to insure each and every parcel of ground placed with it for insurance. To so hold would be tantamount to this court's stating that every life insurance company in this state would be required to insure every applicant for life insurance regardless of the state of his health, age, etc. Appellant in his own deposition admits that Transamerica had no such duty. Having failed to show a duty upon Transamerica to insure the parcel, its refusal to do so cannot support a claim for

damages either as a breach of a fiduciary relationship or in negligence.

Appellant's 5th and 6th claims are somewhat intermingled, that is, Transamerica, in some manner caused appellant damages by reason of appellant's notice of cancellation and Transamerica's refusal to redeliver documents in its possession to appellant. The answer to this claim is found in the instructions given Transamerica and signed by appellant. Paragraph 8 thereof provided that:

> "Authorize Escrow Agent, in the event any demand is made upon it concerning these instructions or the escrow, at its election, to hold any money and documents deposited hereunder until an action shall be brought in a court of competent jurisdiction to determine the rights of Seller and Buyer. . . ."

■ In this case, appellant, as seller, made demand upon Transamerica to cancel the escrow because of alleged failure of the buyers to comply with the escrow instructions. This was followed by a demand by buyers alleging that they had complied with the escrow and contract of sale, and instructing Transamerica to close the escrow at the earliest possible date. Faced with these conflicting demands upon it, Transamerica was well justified in relying upon the above quoted contractual provisions in refusing to deliver documents to either party. Having the right to refuse the delivery of documents to appellant, Transamerica may not be held liable for exercising that right.

The last contention made by appellant is that the trial court erred in granting Transamerica attorney's fees.

Paragraph 9 of the escrow instructions provides that:

> "[Seller and buyer] will indemnify and save harmless escrow agent against all costs, damages, *attorney's fees,* expenses and liabilities which it may incur or sustain in connection with these instructions or the escrow or *any court action arising therefrom* and will pay the same upon demand." (Emphasis added.)

■ The trial court having found that appellant's claim against Transamerica arising from its handling of the escrow was groundless (with which finding we have by this opinion concurred), it was entitled to enforce appellant's contractual promise to pay attorney's fees and costs to Transamerica. The summary judgment in favor of Transamerica against appellant for attorney's fees and costs is affirmed.

■ There is one additional matter before this court which must be disposed of before this matter can finally be placed at rest. Transamerica has, based upon paragraph 9 of the escrow instructions above quoted, petitioned this court for additional attorney's fees incurred on appeal. Under the authority of Lawrence v. Valley National Bank, 106 Ariz. 455, 478 P.2d 79 (1970), we hold this petition is well taken and hereby grant Transamerica its attorney's fees on appeal. Normally, we are of the opinion that the trial court, having the facilities to make factual determinations, is the proper forum to determine the reasonableness of attorney's fees on appeal. However in this case, appellee's counsel has supplied this Court with an itemized statement of services rendered his client in connection with this appeal and an hourly schedule of time involved. Appellant has not controverted this schedule. Based upon this record and the knowledge of this court of the problems appellee's counsel encountered in representing his client on this appeal, we hereby award Transamerica the sum of $3,120 as attorney's fees incurred in this appeal. Moreover, in the event Transamerica incurs additional attorney's fees between the date of this opinion and the date our mandate issues, leave is hereby granted to petition the trial court for an award for such additional attorney's fees.

The judgment of the trial court in favor of Transamerica and against appellant on appellant's counterclaim is affirmed. The judgment of the trial court in favor of Transamerica and against appellant on Transamerica's counterclaim is affirmed. In addition, the trial court is instructed to modify its judgment against appellant

on Transamerica's counterclaim by adding thereto the sum of $3,120 awarded herein as attorney's fees on appeal, together with any further attorney's fees incurred by Transamerica by reason of this appeal.

HAIRE, P. J., and EUBANK, J., concur.