641 P.2d 235

Omer WALTERS and Flora Walters, husband and wife; Frederick E. Bollogh and Oldell M. Bollogh, husband and wife; and Morton Schlesinger and Rita C. Schlesinger, husband and wife, Appellants,

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PHOENIX, a corporation, Appellee.**

No. 15350.

Supreme Court of Arizona, In Division.

Feb. 1, 1982.

322

Thur & Preston by Calvin C. Thur, Phoenix, for appellants.

Jennings, Strouss & Salmon by Neil Vincent Wake and Michael W. Mullane, Phoenix, for appellee.

HAYS, Justice.

This is an action brought by six individual plaintiffs against First Federal Savings and Loan Association ("First Federal") for damages in connection with the purchase of an apartment complex near Sedona, Arizona. The case was tried to a jury and a verdict was returned in favor of First Federal. Plaintiffs appeal from a denial of a motion for new trial and an award of attorneys' fees to First Federal. We have jurisdiction pursuant to 17A A.R.S. Civil Appellate Procedure Rules, Rule 19(e).

In 1972, Charles Kirchner applied for and received a construction loan from First Federal for the construction of an apartment complex near Sedona. Before the construction of the buildings began, the land on which the apartments were to be built had to be filled, leveled and compacted. The evidence indicated the filling was not properly compacted and as a result, part of the filled area sank approximately four inches causing damage to the foundation. This was repaired by filling holes outside the foundation with cement and by pouring more cement on the original foundation to make it level. An architect testified that this method of repair would not adequately correct a sinking foundation but would actually add to the problem. Numerous other problems arose due to the sinking foundation. Additionally, the evidence showed that the construction of the apartments was not performed according to the original plans and specifications.

First Federal's involvement in the transaction was that of a construction lender.

This type of arrangement provides temporary financing during the construction. When the construction is completed, some form of permanent financing replaces the temporary loan, either through a new loan agreement or a novation. Under the construction loan, funds are dispersed in installments. Inspections are conducted to check the progress of the work to determine whether enough of the construction has been completed to warrant release of the next installment of the loan. The inspections, however, are limited to monitoring the construction progress and are not made to check the quality of the work or adherence to the plans and specifications.

In the present case, an independent inspector hired by First Federal to conduct the progress inspections reported that there had been a problem with the foundation and recommended that First Federal should conduct its own inspection of the premises. By the time First Federal sent another inspector to examine the project, the remedial efforts described above had been taken and the inspector reported that the problem with the foundation had been corrected.

In 1973, plaintiffs formed a partnership for the purpose of investing in income-producing property. Plaintiffs learned that the apartment complex being built in Sedona was for sale and after looking at the partially completed structures, they signed a contract of purchase with Kirchner. Under the terms of the contract, plaintiffs were to assume the construction loan and give a promissory note payable to Kirchner for an additional amount.

The basis of the present action arises out of events plaintiffs claim to have transpired at a meeting between Kenneth Braun, a vice president and manager of the construction and commercial loan department for First Federal, Kirchner, and one of the plaintiffs, Flora Walters. Why the meeting was arranged and what was said during the meeting is subject to considerable dispute. According to Walters, she was concerned about the construction after learning that Kirchner had been incarcerated on murder

charges[1] for a month while the apartments were being built. Walters testified that she phoned Braun and told him that she wanted to make sure she was doing the right thing and "wanted to see the plans and the appraisal and . . . wanted to talk to him about if the construction had gone on properly while [Kirchner] was incarcerated and I wanted him [Braun] to vouch for them." During the meeting, Braun supposedly assured Walters that "the value was there," that the apartments had been built according to the plans and specifications, that First Federal was very careful in supervising the work because Kirchner had not been on the job and that no problems arose during the construction.

According to Braun, however, the primary purpose of the meeting was to determine whether First Federal would finance a resale of the apartments as condominiums. Braun testified that he did not remember Walters asking any questions about the quality of construction. If she had asked such questions, he stated he did not believe he would have answered them. The only subject Braun specifically recalled being discussed was whether First Federal should waive its usual transfer fee upon the assumption of the deed of trust by the plaintiffs.

Kirchner's recollection of the meeting was poor and his testimony conflicted with earlier testimony in a related lawsuit as to whether Braun assured Walters that the buildings were constructed according to plans. No mention was made in the meeting of the fact that the foundation had sunk during construction and had been repaired.

After the plaintiffs had purchased the apartments, numerous defects came to their attention. These defects included a leaking roof, cracked walls, flooding of apartments with sewage, a bowed roof, and a tilting structure. Again, the testimony conflicted as to whether the plaintiffs were aware of any of these problems before the sale was completed.

1. Kirchner was exonerated of the charges and released.

After several months of ownership, plaintiffs ceased payments on the deed of trust to First Federal and also ceased payments to Kirchner on the promissory note. First Federal accelerated the debt and foreclosed the property by a nonjudicial trustee's sale. Kirchner brought an action on the note to collect the unpaid balance. In that lawsuit, plaintiffs defended by asserting a failure of consideration and material misrepresentation as to the quality of the buildings. Judgment was rendered in favor of Kirchner and this was affirmed by the Court of Appeals, Division One, in a memorandum decision.

Plaintiffs then brought this action against First Federal claiming that First Federal made false representations to the plaintiffs which amounted to fraud concerning the construction and quality of the apartments. Plaintiffs also alleged negligent misrepresentation, intentional infliction of mental distress and breach of warranty based on the alleged representations that the buildings were well constructed. All but the fraud allegation were dismissed before submission of the case to the jury.

After reviewing plaintiffs' brief, we have discerned the following arguments for our consideration: [2]

1) the trial court erred in refusing to give plaintiffs' requested instruction on constructive fraud;

2) the trial court erred in instructing the jury that fraud could not be committed with regard to an expression of opinion;

3) the trial court erred in instructing the jury on the nine elements of common-law fraud;

4) the trial court erred in refusing to give plaintiffs' requested instruction that a principal is bound by knowledge obtained by its agent;

5) the trial court erred in directing a verdict on the plaintiffs' warranty claim; and

6) the trial court erred in awarding attorney's fees to First Federal under A.R.S. § 12-341.01.

At the outset, we reject First Federal's contention, argued at length and repeated numerous times throughout its brief, that all of plaintiffs' substantive claims are barred by the doctrine of collateral estoppel. We do not reach the merits of this defense because First Federal should have raised this contention by way of a cross-appeal.

In the absence of a cross-appeal, the appellee can defend only as to the arguments allowed in the trial court and cannot present rejected claims in an answering brief. *Maricopa County v. Corporation Commission of Arizona*, 79 Ariz. 307, 289 P.2d 183 (1955). Because First Federal seeks to assert a defense which was not permitted in the trial court, a cross-appeal should have been filed pursuant to 17A A.R.S. Civil Appellate Procedure Rules, Rules 8(a) and 9(a).

## REQUESTED CONSTRUCTIVE FRAUD INSTRUCTION

Plaintiffs argue that the trial court erred when it refused to give plaintiffs' requested instruction on constructive fraud. We find no error.

Plaintiffs' amended complaint alleged fraudulent misrepresentation by First Federal, but did not allege a breach of fiduciary duty or confidential relationship, an essential element of constructive fraud. The pretrial statement further limited plaintiffs' theories of recovery to "false representations," specifically stated in the joint pretrial statement as:

"Whether or not First Federal made false representations to the plaintiffs which amounted to fraud relative to the construction or quality of the building, . . ."

16 A.R.S. Rules of Civil Procedure, Rule 16(a), provides that the pretrial order

---

**2.** We feel compelled to note that the briefs in this case make our determination of this appeal an arduous task. Nonetheless, "we feel constrained to wade through the morass of [appellants' and appellee's] prolix arguments and decide this appeal on its merits." *Cocke v. Transamerica Title Ins. Co. of Arizona*, 16 Ariz. App. 556, 557-58, 494 P.2d 756, 757 (1972).

"controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." The purpose of the pretrial order and statement is to simplify the issues after the parties have completed discovery and to shorten trial time. *Arizona State Highway Department v. Becktold*, 105 Ariz. 125, 460 P.2d 179 (1969). Most importantly, the order acts to limit the issues to be tried. Because of this function, the trial court may refuse to give an instruction to the jury on an issue not embodied in the pretrial order. *See* 6 Wright & Miller, *Federal Practice and Procedure*, § 1527 (1971). Here, the trial judge acted within his discretion in refusing to give the requested instruction on constructive fraud since it was not comprised within the pretrial order. Because of the related litigation which preceded this action, plaintiffs were well aware of the factual and legal issues they were to encounter in the present lawsuit. Under these circumstances, liberal construction of the procedural rules does not require the trial court to consider a new legal theory which was not disclosed in the pretrial statement and order.

## INSTRUCTIONS REGARDING FRAUD BY EXPRESSION OF OPINION

■ Plaintiffs maintain that the trial court erred when it instructed the jury that, "[i]n order to support a claim for fraud, the representation must be of a matter of fact existing in the present, and not merely an agreement or promise to do something in the future or an expression of opinion or judgment as to something which has happened...." The same language may be found in *Waddell v. White*, 56 Ariz. 420, 428, 108 P.2d 565, 569 (1940), and reflects the current state of the law.

As there was no error in giving this instruction, there was also no error in refusing plaintiffs' requested instruction concerning fraud by expression of an opinion. Plaintiffs' requested instruction states the rule that an expression of an opinion may be treated as a representation of fact if the maker holds himself out as possessing superior knowledge or special information regarding the subject of the representation. *See* Restatement (Second) of Torts § 542(a) (1977). Plaintiffs argue that they were entitled to have this instruction given because there was evidence that First Federal had special information, *i.e.*, First Federal required a pre-loan inspection of plans, it represented to Mrs. Walters that it had performed diligent inspections during construction and that it would not have released construction draws without thoroughly inspecting and making sure that the construction complied with the plans.

■ Whether the rule embodied in the requested instruction applies to the facts of this case depends upon the status of the parties. They must have adverse interests in the transaction and the maker must have special experience or training in the matter or purport to have them. *See* Restatement (Second) of Torts § 542, Comment on Clause (a). "The fact that one of the two parties to a bargain is less astute than the other does not justify him in relying upon the judgment of the other. This is true even though the transaction in question is one in which the one party knows that the other is somewhat more conversant with the value and quality of the things about which they are bargaining." § 542 Comment d.

As Professor Prosser has put it:

"Thus the ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond, of an attorney upon a point of law, of a physician upon a matter of health ..."

Prosser, Law of Torts, 4th ed § 109,726 (1971).

■ The question, then, is whether First Federal, as a construction lender, should be viewed as having special training or experience in matters of construction quality which would justify reliance by the plaintiffs. We answer this in the negative.

In *Smith v. Continental Bank*, 130 Ariz. 320, 636 P.2d 98 (1981), plaintiffs filed an action against the defendant bank seeking recission of a contract to purchase a home. The bank had financed the building of a

development of single-family residences and also acted as a vendor of the houses. The plaintiffs, purchasers of one of the homes, became dissatisfied with the property after discovering various conditions which they considered to be defective. The plaintiffs argued that the home was defective and that they were entitled to recission for breach of an implied warranty of fitness. In response to this argument we stated:

"The bank cannot be said to have warranted the construction because it did not do the construction work. The status of the bank is not changed by the fact that its officers reviewed and approved the original plans and specifications. *Such actions by the bank are for the protection of its security and not for the benefit of future buyers.*" (Emphasis added).

*Id.* at 322, 636 P.2d at 100.

Admittedly, the issue in *Smith* was not the same issue which is now before us. However, *Smith* recognizes that a financial institution which provides financing for construction should not be viewed as occupying the same status as a builder. We believe that this principle is applicable to the present case and prohibits viewing First Federal as having special experience or training in judging the quality of construction. Although Flora Walter's testimony indicates that First Federal may have represented that the buildings were well constructed, there is no evidence which supports the contention that First Federal held itself out as possessing any expertise in construction. Moreover, Mrs. Walters was a real estate broker of 15 years experience who had previous experience with construction loans in Michigan. Therefore, the trial judge properly refused plaintiffs' requested instruction.

## INSTRUCTION ON COMMON–LAW FRAUD

Plaintiffs maintain that the trial court misstated one of the nine elements of common-law fraud when it instructed the jury that the fourth element of fraud was not "the speaker knew the representation was false or was *consciously* ignorant of its truth." (Emphasis added). Plaintiffs ar-

gue that the insertion of the word "consciously" not only misstates the law, but is totally misleading and could do nothing but confuse the jury.

■■■ Arizona cases which state the nine elements of fraud do not use the word "consciously" before the phrase "ignorant of its truth." *See, e.g., Staheli v. Kauffman*, 122 Ariz. 380, 595 P.2d 172 (1979). Thus, it was error for the trial court to give the instruction. In order to justify reversal, however, the trial error must be prejudicial to the substantial rights of the appealing party. *Employment Security Commission of Arizona v. Doughty*, 13 Ariz.App. 494, 478 P.2d 109 (1970). The prejudicial nature of the error will not be presumed but must affirmatively appear from the record. *Rimondi v. Briggs*, 124 Ariz. 561, 606 P.2d 412 (1980). After reviewing the record we conclude that the erroneous instruction does not mandate reversal.

Notwithstanding the effect the insertion of the word "consciously" may have had on the jury, the error is not crucial since the record is devoid of any evidence which would indicate that any of the alleged representations by Mr. Braun were anything more than expressions of opinion. Because we have already determined that the expressions of opinion could not be regarded as expressions of fact, thus precluding justifiable reliance on them by the plaintiffs, the fraud claim was fatally deficient.

Because we find no evidence to support plaintiffs' fraud claim, it is unnecessary to address the plaintiffs' argument regarding the trial court's failure to give their requested instruction that a principal is bound by knowledge obtained by its agent.

## DIRECTED VERDICT ON WARRANTY CLAIM

■■■ Plaintiffs assert that the trial court erred by directing a verdict on the plaintiffs' warranty claim. Although we are uncertain as to the basis of plaintiffs' warranty claim, *Smith v. Continental Bank, supra,* makes clear that an action for breach of warranty cannot be maintained against a lending institution where the institution is.

not engaged in the business of building and selling homes, or as applied to the facts of this case, building and selling apartments.

## AWARD OF ATTORNEYS' FEES

 For their last argument, plaintiffs contend that the trial court improperly awarded attorneys' fees under A.R.S. § 12–341.01 since the present action was brought in 1975, prior to the effective date of the statute. We agree. In *Bouldin v. Turek*, 125 Ariz. 77, 607 P.2d 954 (1979), we held that § 12–341.01 does not apply to suits commenced before its effective date. Therefore, the award of attorneys' fees in the sum of $1,122.25 to First Federal is vacated.

The judgment of the superior court is affirmed in part and vacated in part.

GORDON, V. C. J., and CAMERON, J., concur.