**BANKERS TRUST COMPANY, Appellee,**

v.

**Donald R. WOLTZ, Appellant.**

**No. 66857.**

Supreme Court of Iowa.

Nov. 24, 1982.

George G. West and Steven C. Jayne, Des Moines, for appellant.

David L. Charles and Victor C. Rabinowitz of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS and McGIVERIN, JJ.

McGIVERIN, Justice.

Defendant Donald R. Woltz appeals from a partial judgment entered on a jury verdict which found him liable as guarantor of a $170,000 consolidated loan made by plaintiff Bankers Trust Company to a corporation of which Woltz owned one-half of the stock. Three issues are raised by defendant: (1) whether extrinsic evidence should have been admitted to aid in interpreting the surety agreement; (2) whether the surety agreement covered future loans made by plaintiff to the corporation; and (3) whether the award of attorney fees to plaintiff was proper under Iowa Code section 625.22 (1981). The plaintiff has also filed an application for its appellate attorney fees. We conclude the trial court properly excluded the evidence proffered by Woltz; we affirm the judgment entered on the jury verdict and remand for the limited purpose of determining attorney fees on appeal and for other appropriate proceedings.

This action was initiated by Bankers Trust in order to enforce surety agreements against several guarantors. Of the initial four defendants only Woltz was found liable.[1] The jury returned a verdict against him for $225,037.50, on which judgment was entered. After a further hearing, the district court also awarded Bankers Trust $15,350.00 in attorney fees against Woltz. He appealed before the trial court had disposed of his cross-claim for indemnity against defendant Thomas P. Mathews. Thus the judgment was not appealable as a matter of right. We granted permission for the interlocutory appeal to proceed pursuant to Iowa R.App.P. 1(c) and 2.

Woltz was a law school graduate but never practiced law. He had an extensive business background.

On September 27, 1977, Woltz, who owned one-half of the corporate stock of Water Systems, Ltd., signed a personal guaranty for loans made by plaintiff to the corporation. Prior to September 27, the corporation had borrowed $25,000 from Bankers Trust, and on that date it borrowed an additional $120,000. On December 21, another $25,000 loan was made to the corporation. All loans from plaintiff to the corporation were consolidated into a $170,000 note, signed by defendant in his corporate capacity, in April of 1978. The note was not paid and Bankers Trust commenced this action against the guarantors.

The surety agreement includes the following language: "if the Bank shall extend the time of payment of the existing indebtedness ... or shall hereafter enter into financial or other transactions with ... the Debtor or loan money to it, ... [the guarantors] will ... pay [the bank] ... the amount of such unpaid ... debts...." The agreement also includes a blank for insertion of a limit to the dollar amount of the guarantee; the word "unlimited" was inserted in that blank.

At the close of plaintiff's evidence during trial, plaintiff moved in limine to preclude the introduction by Woltz of any extrinsic

---

1. The suit was filed against Lowell Dillard, Thomas P. Mathews, Donald R. Woltz and Harold E. Cowdin. Dillard was dismissed out by the plaintiff without prejudice and Cowdin filed for bankruptcy during the pendency of the proceedings. Mathews and Woltz proceeded to trial and the jury found Mathews not liable as a guarantor.

evidence that the surety agreement was limited to $25,000, or any other amount. The motion was sustained and defendant made an offer of proof in the absence of the jury. Woltz testified in substance that he had been assured by the bank's agent[2] prior to signing the surety agreement on September 27, 1977, that his total personal exposure was $25,000, and that was what they meant to say in the surety agreement. The trial court reaffirmed its previous ruling and excluded the offered testimony.

## I. *Admission of extrinsic evidence.*

When persons place their agreement in writing, the parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from the agreement. But when the rule is invoked by a party, two distinct steps must be taken. First, the meaning of the words that the parties used in the writing must be ascertained (interpretation), and then second, the court must apply that meaning to the writing.

*Pappas v. Hauser,* 197 N.W.2d 607, 611 (Iowa 1972), citing *Hamilton v. Wosepka,* 261 Iowa 299, 154 N.W.2d 164 (1968).

■■■ Defendant contends that his testimony should have been admitted to aid in the interpretation of the word "unlimited" which appeared in the following context in the surety agreement:

1. That if the Bank shall extend the time of payment of the existing indebtedness of the Debtor to the Bank, (if any), and/or shall hereafter enter into financial or other transactions with or concerning the Debtor, or loan money to it, and the Debtor shall fail, neglect or refuse to promptly, fully and completely pay, satisfy and discharge all and singular its debts or obligations to the Bank, whenever the Bank shall lawfully demand payment, satisfaction or discharge thereof, we will, upon demand of the Bank, pay to it in lawful money, at its office in Des Moines, Iowa, the amount of such

unpaid or unsatisfied debt or obligations of the Debtor, together with interest due from the Debtor thereon. Provided, however that in no event shall we be held liable to pay in excess of the principal sum of $ *UNLIMITED* DOLLARS, plus interest in such amount as shall be due from the Debtor on the one or more debts or obligations included in said principal sum.

It is our view, however, that the proffered testimony concerned only what the defendant wanted the agreement to say. The offer of extrinsic evidence was not an attempt to interpret the language actually used by the parties; it was an attempt to vary or alter language in the written agreement, and as such was inadmissible. *Tamm, Inc. v. Pildis,* 249 N.W.2d 823, 832 (Iowa 1976). Extrinsic evidence offered to show "what the parties meant to say" instead of "what was meant by what they said" is not admissible even under the broad holding of *Hamilton.* *Associated Grocers of Iowa Cooperative, Inc. v. West,* 297 N.W.2d 103, 109 (Iowa 1980). In *Hamilton,* 261 Iowa at 305, 154 N.W.2d at 167, this statement is found:

It was the function of the trial court to ascertain the true intent and meaning of the parties to the contract as revealed by the language used there; " * * * 'not by showing that the parties meant something other than what they said, but by showing what they meant by what they said.' " It is not what the parties meant to say but what they meant by what they did say.

(Citations omitted).

We conclude that the trial court was correct in excluding the proffered extrinsic evidence as it was not concerned with interpreting the meaning of the words actually used by the parties in the written agreement.

---

2. Woltz's oral agreement is alleged to have taken place with Robert Schiers, a Bankers

Trust loan officer who died prior to this trial.

II. *Extent of surety agreement.*[3] Defendant also contends that as a matter of law the surety agreement by its terms was limited to $25,000 and that it lacks the necessary language to create a continuing guaranty of an unlimited amount of money for an unlimited period of time. We conclude that there are no "magic words" which make a surety agreement continuing and that the trial court was correct in ruling, on a motion made by plaintiff, that the surety agreement was not ambiguous as to a continuing guaranty obligation.

A continuing guaranty "contemplates a future course of dealing during an indefinite period, or it is intended to cover a series of transactions or a succession of credits.... An offer for a continuing guaranty contract is ordinarily effective until revoked by the guarantor." 38 Am. Jur.2d, *Guaranty* § 23 at 1023, § 63 (1968); *Union Trust and Savings Bank v. State Bank,* 188 N.W.2d 300, 302 (Iowa 1971).

The surety agreement contained the following language:

1. [I]f the Bank shall extend the time of payment of the existing indebtedness ... or shall hereafter enter into financial or other transactions with ... the Debtor or loan money to it, ... [the guarantors] will ... pay [bank] ... the amount of such unpaid ... debts ....

\*     \*     \*     \*     \*     \*

3. [T]his Agreement ... is made ... for the purpose of ... extend[ing] the time of payment ... of existing debts ... and/or to extend credit or additional credit ....

4. [T]his instrument shall remain in force and effect ... until released .... Provided, that if the Sureties shall give to the Bank written notice of their desire to discontinue this undertaking of suretyship, the extent of this liability ... shall be the payment ... of the debts ... up to the time of the receipt of such notice by the Bank.

Woltz contends that this language is not the language of a continuing guaranty. While it is true that the agreement does not state specifically that it is a continuing guaranty, the document's creation of a continuing guaranty is sufficiently clear and unambiguous. It is evident from the language of the agreement that the parties contemplated a future course of dealing which could result in additional transactions between the plaintiff and the corporation. The trial court did not err in its ruling on plaintiff's motion.

III. *Attorney fees.* Pursuant to Iowa Code section 625.22 (1981), plaintiff was awarded $15,350.00 in attorney fees by the trial court; plaintiff also seeks to recover appellate attorney fees. A partial judgment for the plaintiff was entered April 28, 1981, and the award of attorney fees was entered May 8, 1981. Section 625.22 which allows attorney fees in this case was amended effective July 1, 1980.[4] Defendant contends that the award of attorney fees provided for in a written contract must be made pursuant to the statute in effect at the time the contract was signed.

---

3. For a general discussion of surety law in Iowa, see Calhoun, *Suretyship for the Iowa Lawyer,* 67 Iowa L.Rev. 219 (1982).

4. The written contracts providing for attorney fees were the surety agreement and the consolidated note for $170,000. At the time these contracts were signed, September 27, 1977, and March 27, 1978, the statute in effect provided:

When judgment is recovered upon a written contract containing an agreement to pay an attorney's fee, the court shall allow and tax as a part of the costs:
1. On the first two hundred dollars or fraction thereof recovered, ten percent.
2. On the excess of two hundred to five hundred dollars, five percent.
3. On the excess of five hundred to one thousand dollars, three percent.
4. On all sums in excess of one thousand dollars, one percent.

Iowa Code § 625.22 (1975), (1977).

At the time the judgment was entered, however, § 625.22 had been amended to read as follows:

When judgment is recovered upon a written contract containing an agreement to pay an attorney's fee, the court shall allow and tax as part of the costs a reasonable attorney's fee to be determined by the court.

Iowa Code § 625.22 (1981).

■ The effect of the amendment to section 625.22, the statutory provision for attorney fees provided for in contracts, is a matter of first impression for us. We note that the right to attorney fees and costs is statutory, and depends upon the statute in force at the termination of the proceedings. *See Jeffcoat v. Highway Contractors, Inc.,* 508 P.2d 1083, 1086–87 (Okla.1973); *Hogan v. Ingold,* 38 Cal.2d 802, 814–15, 243 P.2d 1, 8–9 (1952); *Igoe Bros. v. National Surety Co.,* 112 N.J.L. 243, 250–52, 169 A. 841, 844–45 (1934); 20 Am.Jur.2d *Costs* § 72 at 59 (1968). Since no party is entitled to costs until a judgment is recovered, Iowa Code § 625.22 (1981), a party has no vested right to costs at the commencement of the action. The right to costs accrues at the termination of the proceedings and this right exists solely by virtue of the statute. The extent of the right can be governed only by the statute in existence at the time the right vests. Therefore, Iowa Code section 625.22 (1981) controls attorney fees to be taxed as part of the costs in the present case.

A review of a related statute strengthens our conclusion that the amendment to section 625.22 was not intended to be prospective only. *See Wonder Life Co. v. Liddy,* 207 N.W.2d 27, 32 (Iowa 1973) (in searching for legislative intent, court should consider and examine statutes in related areas); *Sunset Mobile Home Park v. Parsons,* 324 N.W.2d 452, 458 (Iowa 1982). Effective January 1, 1981, Iowa Code section 535.3 was amended to allow interest on a judgment at ten percent from the date the petition was filed. In *Janda v. Iowa Industrial, Inc., and Indag Iowa Inc.,* 326 N.W.2d 339 (Iowa 1982), also decided today, we held that this was an amendment relating solely to a remedy which was intended to apply retroactively; no rights to interest arose until the judgment was rendered. Thus, no obligation for, or rights to, interest attached under the old statute.

We hold that the trial court was correct in fixing and taxing attorney fees pursuant to the statute in effect at the time the judgment was entered.

■ The same rationale under section 625.22, which justifies awarding attorney fees in the trial court, also justifies awarding attorney fees in this appeal—the written agreement provided for attorney fees and in no way limited them to costs in the trial court. We prefer that the district court determine the reasonable amount of attorney fees plaintiffs should be awarded on this appeal. Therefore, we remand the case to the district court for the limited purpose of an evidentiary hearing on and the fixing of appellate attorney fees. *See Public Finance Co. v. Van Blaricome,* 324 N.W.2d 716, 726 (Iowa 1982) (remanded to district court for determination of trial court and appellate attorney fees by the district court under Iowa Code section 537.-5201(8) (1981)); *Maday v. Elview-Stewart Systems Co.,* 324 N.W.2d 467, 471 (Iowa 1982) (remanded to trial court for hearing on attorney fees, including those for appeal, pursuant to Iowa Code chapter 91A (1981)); *Mershon Gimeno Construction Co. v. Robinson,* 534 P.2d 635, 637 (Colo.App.1975) (contractor who sued upon and was awarded judgment on subcontract which provided for attorney fees, if collection become necessary, awarded appellate attorney fees; remanded to trial court for hearing on reasonable attorney fees in defending matter on appeal); *but cf., Cocke v. Transamerica Title Insurance Company of Arizona,* 16 Ariz.App. 556, 494 P.2d 756 (1972) (reasonable appellate attorney fees under vendor's contractual promise to pay attorney's fees determined by appellate court because appellee's counsel had provided court with itemized statement of services, an hourly schedule of time involved and appellant did not controvert the schedule); *Washington Trust Co. v. Fatone,* 106 R.I. 68, 256 A.2d 490 (1969) (reasonable counsel fees incurred by holder of promissory note in successful defense of appeal from a judgment for holder may be recovered from an obligor who has expressly agreed to pay "costs and expenses of collection, including a reasonable attorney's fee; "parties given opportunity to submit affidavits to aid appellate court deciding question of attorney fees); *see also* Annot., 52 A.L.R.2d § 63 (1957).

The remainder of costs in this court are taxed to Woltz.

We have considered all contentions made by Woltz and find them without merit.

In summary, we affirm the judgment entered by the trial court on the jury verdict. We remand this case for the limited purpose of an evidentiary hearing on and the fixing of attorney fees for this appeal, and for other appropriate proceedings, if any, as to Woltz's cross-claim against Thomas P. Mathews.

AFFIRMED AND REMANDED.