NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

GORDON DAVID GOODWIN, *Petitioner/Appellee/Cross-Appellant*,

*v.*

WENDY RENEE GOODWIN, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 22-0160 FC
FILED 5-30-2023

Appeal from the Superior Court in Yuma County
No. S1400DO201900396
The Honorable Lawrence C. Kenworthy, Judge

**AFFIRMED**

COUNSEL

Mary Katherine Boyte PC, Yuma
By Mary K. Boyte Henderson
*Counsel for Petitioner/Appellee/Cross-Appellant*

S. Alan Cook PC, Phoenix
By S. Alan Cook, Sharon Ottenberg
*Counsel for Respondent/Appellant/Cross-Appellee*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Anni Hill Foster joined.

---

**H O W E**, Judge:

**¶1** Wendy Goodwin ("Wife") appeals various aspects of the family court's amended decree of dissolution of marriage ("amended decree") ending her marriage to Gordon Goodwin ("Husband"). Husband cross-appeals the award of a Jeep to Wife. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2** We view the facts in the light most favorable to sustaining the family court's decree. *Bowser v. Nguyen*, 249 Ariz. 454, 456 ¶ 8 (App. 2020). Wife and Husband were married in 2003 and have two minor children, R.G. and C.G. Husband petitioned for the dissolution of the marriage and served Wife on April 8, 2019. After both parties submitted pretrial statements, the family court held a trial on the characterization and distribution of the disputed assets. The following describes each asset at issue in this appeal.

### A. Assets at Issue

#### *Husband's 401(k) Plan*

**¶3** Husband testified that through his employment, he participated in an employer-sponsored 401(k) Profit Sharing Plan ("401(k) plan") held at Fidelity Investments. Before he married Wife, Husband had contributed $30,337.41 to his 401(k) plan. Husband continued to make contributions to his 401(k) plan after he married Wife. In October 2014, Husband's employer transferred the management of the 401(k) plan to Wells Fargo. Husband testified that he made no withdrawals from the 401(k) plan.

**¶4** Husband had retained an expert to identify and trace the value of his contributions before marriage. The expert testified that Husband's contributions before marriage had grown to $66,475.31 as of October 2014 when the management of the plan was transferred to Wells Fargo. As of February 2021, the pre-marriage contributions had grown to

$167,565.68. The expert's report used the direct tracing method—matching "a prized asset to its separate property source using documents and testimony[,]"—to trace and calculate the current value of Husband's premarital contributions to the plan. Donald A. Glenn et al., *The Family Law Services Handbook: The Role of the Financial Expert* (John Wiley & Sons, 2011). He testified that several years of the 401(k) plan's statements were unavailable to him, however. Finally, he testified that no evidence showed that the funds were moved out of the 401(k) plan.

¶5　　　　Wife, on the other hand, testified that sometime during the marriage, she and Husband had undertaken a farming business. Wife believed that part of the monies to fund that business came from Husband's 401(k) plan or a loan.

### Educational Savings Accounts

¶6　　　　Husband testified that when the children were born, he established two IRC § 529 educational savings accounts ("529 accounts") in his name for the children's benefit. He had solely managed the 529 accounts and had requested in his pretrial statement that the accounts remain in his sole control and management. However, at trial, he testified that he had no objection to Wife being a co-manager.

¶7　　　　Wife, consistent with her pretrial statement, requested that she and Husband have joint management and control over the 529 accounts. Given Husband's willingness to accept such request during his testimony, she stated that she accepted being a co-manager.

### Jeep Wrangler

¶8　　　　At trial, Husband testified that during the marriage, he bought a Jeep Wrangler for family use. Wife testified, on the other hand, that Husband bought the Jeep as a graduation gift for her when she graduated from massage therapy school. She also testified that Husband had used the Jeep about five or six times, but he had never used the other vehicle that she regularly used.

### B. The Decrees

¶9　　　　The family court entered a decree of dissolution of marriage ("decree"). Wife timely moved to alter or amend the decree, in various ways, under the Arizona Rule of Family Law Procedure ("Rule") 83. Among other things, she requested that the family court order that she receive an extra day of parenting time each year for one child and Husband

receive an extra day each year for the other child to allow each party to file taxes as head of household. The family court denied the motion except for a few modifications and entered an amended decree.

**¶10** In its amended decree, the family court awarded Husband as his sole and separate property his premarital contributions to his 401(k) plan of $30,337.41, which had grown to $167,565.68 as of February 2021, together with the gains or losses associated with that portion of the account accruing after that date. It also granted Husband sole management of the 529 accounts. Husband was ordered to manage the 529 accounts solely for the benefit of the children, receive no personal benefits from the accounts, and provide accountings to Wife. Further, the family court ordered Husband to continue to provide medical insurance to the children and pay the premiums of the coverage. It stated, however, that "[b]oth parties are required to ensure that the minor child[ren] ha[ve] medical coverage and will obtain medical coverage through an employer if it is available at a reasonable cost."

**¶11** The amended decree also modified the parenting plan agreed upon by Wife and Husband to provide that "for purposes of tax filing status, the parent receiving the head of household and dependent child tax deduction . . . shall also receive an extra day of parenting time as to the respective child." The amended decree provided that Husband "may claim the head of household and the dependent child tax deduction associated with [R.G.] in all tax years." The right to claim head of household and the dependent child tax deduction associated with C.G. would be alternated, with Husband receiving odd-numbered tax years and Wife receiving even-numbered tax years. Finally, the family court awarded Wife the Jeep as her sole and separate property. Wife timely appealed. Husband timely cross-appealed.

## DISCUSSION

**¶12** Wife contends that the family court erred in several rulings in its amended decree. We address each challenge below. In a dissolution proceeding, the family court has broad discretion to divide the community property equitably. *See Boncoskey v. Boncoskey*, 216 Ariz. 448, 451 ¶ 13 (App. 2007). We review the family court's division of property for an abuse of discretion but review the family court's characterization of property de novo. *Helland v. Helland*, 236 Ariz. 197, 199 ¶ 8 (App. 2014).

## I.       Husband's 401(k) Plan

¶13        Wife argues that the family court erred in awarding Husband $167,565.68 of his 401(k) plan because Husband's expert miscalculated that amount. Reasonable evidence supports the family court's order. Husband's expert concluded that, when the couple married, Husband's 401(k) plan had $30,337 in his sole and separate property, which from the start of marriage in 2003 until the management of the 401(k) plan was transferred to Wells Fargo in 2014 grew to $66,475. And as of February 2021, the pre-marriage contributions had grown to $167,565.68. He also testified that evidence that the funds were withdrawn from the 401(k) plan did not exist. Husband also testified that he had never withdrawn funds from his 401(k) plan.

¶14        Wife did not retain an expert witness to refute Husband's expert testimony. She argues, however, that Husband's expert's calculations were unnecessary and incorrect. She contends that one can "multiply the number of shares times the per share values" when the management of the 401(k) plan was transferred to Wells Fargo and arrive at the true value—$49,750—of Husband's sole property as of October 2014. But as Husband points out, Wife's method accounts only for the stock price and fails to consider the passive earnings—dividends, share splits, or other corporate actions—during the period at issue. In any event, this court "defer[s] to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348 ¶ 13 (App. 1998); *see also Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996) ("If an expert fails to calculate the value of an asset according to standard methodology, that failure goes to the weight of the expert's opinion."). Thus, Wife has not shown that the family court erred in awarding Husband $167,565.68 of his 401(k) plan as his sole and separate property.[1]

## II.      The Educational Savings Accounts

¶15        Wife argues that the family court erred in (1) awarding the 529 accounts solely to Husband and (2) ordering that the funds be used for the benefit of the parties' children. Wife misinterprets the amended decree when it states that the 529 accounts were awarded solely to Husband. Although Husband was granted sole management over the 529 accounts,

---

[1]        Wife also argues that the family court awarded Husband the post-service contributions twice. Wife misquotes the amended decree, however. Although the decree awarded Husband the post-service contributions twice, the amended decree did not.

he was also ordered to (1) manage the accounts solely for the benefit of the children, (2) receive no personal benefits from the accounts, and (3) provide accountings to Wife.

**¶16** Wife also agreed in her pretrial statement that "the parties should not use the funds unless for the children's education, absent an agreement to use the funds for a purpose other than education." She requested that the family court order only joint management and control of the 529 accounts for the benefit of the children. Although Wife now claims that her agreement that the funds be used solely for the children's benefit was conditioned upon her having equal management rights, her pretrial statement does not reflect such condition. The family court adopted the parties' agreement, and thus we see no error. *See In re Marriage of Davidson*, 540 N.E.2d 641, 646 (Ind. Ct. App. 1989) (holding that the family court was "certainly within its authority" to set apart an annuity and bank account and designate that they be used solely for the child's education).

## III. Other Issues

**¶17** Wife argues that the family court erred in ordering that she and Husband concurrently provide health insurance for the minor children. Wife misreads the amended decree. The family court ordered Husband "to continue or add the minor children to his medical insurance" and "pay the premium costs for such coverage." Wife must provide insurance for the minor children only if (1) Husband's medical insurance lapses and (2) she can obtain medical insurance through an employer at a reasonable cost. Thus, Wife has shown no error.

**¶18** Wife also objects to the family court's statement that "Husband is awarded all rights, title, and interest in his Ameriprise Brokerage Account end #9133 *as his sole and separate property*." (Emphasis added). Wife argues—and Husband agrees—that the account at issue is an asset of the marital community, the family court treated it as such, and that the family court allocated its value between the parties as community property. Wife requests that the words after the account number be deleted for clarification. But the language at issue is inconsequential because the family court treated the account as community property; the language did not prejudice Wife. *See Walters v. First Fed. Sav. & Loan Ass'n of Phx.*, 131 Ariz. 321, 326 (1982) ("[T]o justify reversal [] the trial error must be prejudicial to the substantial rights of the appealing party. The prejudicial nature of the error will not be presumed but must affirmatively appear from the record." (internal citations omitted)). Reversal therefore is not warranted.

**¶19** Wife next argues that the family court erred in awarding "the parent receiving the head of household and dependent child tax deduction . . . *an extra day* of parenting time as to the respective child." (Emphasis added). But Wife stated in her Rule 83 motion that she did not oppose adding language to the amended decree that would allow each party to file taxes as head of household. She also proposed that the family court order that she receive an extra day each year for one child and Husband receive an extra day each year for the other child. "Having successfully persuaded the court to follow this approach, [she] cannot now argue it was erroneous" simply because she did not receive as many extra days as she preferred. *In re Marriage of Thorn*, 235 Ariz. 216, 224 ¶ 35 (App. 2014). Thus, Wife induced any error related to the right to claim head of household status and the extra day of parenting time. *Schlecht v. Schiel*, 76 Ariz. 214, 220 (1953) ("By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error."); *see also Thorn*, 235 Ariz. at 224 ¶ 35.

**¶20** Finally, Wife asks that language be added to the amended decree to clarify Wife's "understanding" that Husband's term life insurance policy was awarded to her to support her and the children "should Husband meet an untimely demise." The amended decree states that "Husband shall maintain Wife as the beneficiary" of the Husband's term life insurance policy. As to her request that language be added, Wife fails to state any basis for her understanding and cites no support in the record. Thus, she has waived her argument. *MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011); *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 299 ¶ 28 (App. 2000).[2]

## IV.    Cross-Appeal

**¶21** Husband argues that the family court erred in finding that he had gifted Wife the Jeep and excluding its value from the calculation of the equalization payment owed. At trial, Wife testified that Husband had bought the Jeep as a graduation gift to her. Husband, on the other hand, testified that he bought the Jeep for family use. Thus, conflicting evidence existed about the characterization of the Jeep as community or separate

---

[2]    Wife also argues that the family court erred in ordering Husband to pay child support and spousal maintenance directly to Wife rather than issue an order of assignment for payment of spousal maintenance and child support. Husband argues the family court did not err but agrees to the issuance of the order of assignment. And Wife informed this court in her reply brief that the parties settled this issue. Thus, we do not address it.

property. "Our duty on review does not include re-weighing conflicting evidence." *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009). Viewing the evidence in the light most favorable to upholding the family court's determination, the family court did not err.

## CONCLUSION

**¶22**      For the foregoing reasons, we affirm. Wife requests attorneys' fees and costs under A.R.S. § 25–324, Rule 78, and Arizona Rule of Civil Appellate Procedure 21. Husband requests attorneys' fees and costs under A.R.S. §§ 25–324(B)(1)–(2) and 25–349, and Arizona Rule of Civil Appellate Procedure 21. Having considered the relevant factors, we deny both requests for attorneys' fees. Because neither party prevailed on the issues he or she raised on appeal, we decline to award costs to either party.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8