Helen ARNOLD–OLSON, Executor of the Estate of Henrietta Dows Arnold, Appellee/Cross–Appellant,

v.

IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellant/Cross–Appellee.

No. 90–1422.

Court of Appeals of Iowa.

May 28, 1992.

Mark McCormick, Belin Harris Lamson & McCormick, A Professional Corporation, Des Moines, and Donald G. Thompson, Bradley & Riley, P.C., Cedar Rapids, for appellant.

David A. Hacker and Stephen J. Holtman, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Presiding Judge.

Duane Arnold and Henrietta Dows Arnold were husband and wife. Prior to his death, Duane was president and chairman of the board of Iowa Electric Light and Power Company (IE). Duane participated in two retirement plans with IE. The basic pension plan provided Henrietta with a yearly pension for the duration of her life following Duane's death. The deferred compensation plan was intended to provide a supplemental retirement income. This plan allowed officers of IE who remained employed full-time until age sixty-five to receive seventy-five percent of their final salaries for fifteen years. If the retired officer died before receiving benefits for ten years, benefits were to be paid to the officer's beneficiary until IE had made payments for a total of ten years. If the officer died prior to retirement, the benefits were to be paid to the officer's beneficiary for ten years.

Duane died in April 1983. At his death Duane was sixty-five years old and a full-time employee of IE. Duane's children were adults at the time of his death. Henrietta survived Duane and was designated as Duane's beneficiary under the deferred compensation plan. Therefore, Henrietta received $153,750 annually, which was equal to seventy-five percent of Duane's last annual salary. IE ceased making payments to Henrietta at her death in June 1986. Henrietta's estate demanded that IE continue making payments to the estate. IE rejected the estate's demand. The estate then brought this action to recover the remainder of the ten years of payments

under the deferred compensation plan. The parties stipulated the estate was entitled to recover $1,092,381.31 plus interest from January 1, 1990, if the estate's claim was successful. The district court adopted the interpretation of the plan advocated by the estate and awarded judgment accordingly. IE appeals and the estate cross-appeals.

■ We review a case according to the manner in which it was tried. *Bricker v. Maytag Co.*, 450 N.W.2d 839, 841 (Iowa 1990). This case was tried in equity. Thus, our review is de novo. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

This case involves the interpretation of Duane's deferred compensation plan agreement. The relevant provisions of that agreement provide:

2.2 *Designated Beneficiary:* "Designated beneficiary," as used in this Agreement shall be limited to surviving spouse or dependent children.

2.3 *Normal Retirement Benefit:* If the Officer remains in the full time employ of IE until he attains age sixty-five (65), the Officer shall receive annually, for a period of fifteen years (15), providing the Officer is surviving during such fifteen (15) year period, a retirement benefit.... [I]f the Officer shall die before the payment of the fifteenth (15th) annual benefit, but after having received at least ten (10) years of such annual benefit payments, such benefit payments shall terminate upon his death. In the event of the Officer's death after retirement, and prior to the Officer's having received ten (10) full years of benefit payments as herein provided, the designated beneficiary of the Officer shall be entitled to receive additional payments so that the total payments by the Company pursuant to this Agreement shall equal ten (10) years certain. If there is no

surviving spouse or dependent children of the Officer on his death then this Agreement terminates without further payment by or obligation on the part of the Company.

2.4 *Death Benefit Payable Prior to Commencement of Retirement Benefits:* If the Officer dies prior to termination of his employment or otherwise prior to commencement of payment of benefits as herein provided, the Company shall pay to the Officer's Designated Beneficiary, a death benefit, equal to seventy-five percent (75%) of the annual salary set by the Board of Directors of the Company for the Officer for the twelve-month period in which the Officer's death occurs. Said amount is inclusive of the preretirement spouse's pension benefit under the Company's Pension Plan and any benefit paid to a dependent child or children from the Company's pension plan, if any. Such annual payments are to be made in equal monthly installments, for a ten (10) year period, to commence within two (2) months of the Officer's death, unless otherwise agreed between the Company and a legally qualified representative of the Officer's estate. In the event the Officer should die leaving no surviving spouse or dependent children, then this Agreement shall terminate and the Company shall have no further obligations hereunder.

5.1 If the Officer should die, either before retirement or prior to the fifteen (15) years from the date of retirement, leaving no spouse or dependent children, the Company shall cease such monthly installments beginning on the date of death, and the Company shall have no further obligations under this Agreement.

■ IE maintains the language of the agreement coupled with extrinsic evidence admitted at trial demonstrate the benefits to Henrietta were to terminate at her death. Because there is a dispute concerning the admissibility of extrinsic evidence at trial, we briefly address that issue first.

[I]n the process of interpretation and construction of the integrated agreement all relevant evidence pointing to meaning

is admissible.... [O]rdinarily all surrounding circumstances and conditions must be examined before there is any trustworthy assurance of derivation of contractual intent.... Construing a contract of debatable meaning by resort to surrounding and antecedent circumstances and negotiations for light as to the meaning of the words used is never a violation of the parol evidence rule.

*Hamilton v. Wosepka,* 261 Iowa 299, 311–12, 154 N.W.2d 164, 170–71 (1967) (quoting *Garden State Plaza Corp. v. S.S. Kresge Co.,* 78 N.J.Super. 485, 189 A.2d 448, 454 (1963)). However, "extrinsic evidence offered to show 'what the parties meant to say' instead of 'what was meant by what they said' is not admissible...." *Bankers Trust Co. v. Woltz,* 326 N.W.2d 274, 276 (Iowa 1982). It is our view the extrinsic evidence introduced at trial was an attempt to interpret the language used by the parties in the written agreement, and as such was admissible. Nevertheless, we agree with the district court the evidence did not establish Duane's intent concerning whether IE would continue to make payments under the plan if a surviving spouse entitled to death benefit payments died before he or she had received payments for a full ten years.

█ IE argues when the agreement is read as a whole, the cut-off provisions in paragraphs 2.3, 2.4, and 5.1, coupled with the limitation on designated beneficiaries in paragraph 2.2, confirm that estates were not to be beneficiaries under the agreement in any circumstances. IE contends pension benefits were to go only to the officer, the officer's spouse, or dependent children. We disagree.

Paragraphs 2.3, 2.4, and 5.1 expressly provide for termination of benefits upon death of a person or absence of survivors. However, the agreement does not include similar language terminating IE's obligation on the death of a surviving spouse entitled to death benefit payments. Such an omission supports the conclusion benefits were not to terminate upon the death of the spouse. The only intent manifested by the language of paragraph 2.4 is pay-

ments to the designated beneficiary continue "for a ten year period." Paragraph 2.2 limits designated beneficiaries "to surviving spouse or dependent children." The obvious intent of that section is to limit the persons an executive can designate as a beneficiary. The interpretation advanced by IE effectively includes the additional purpose of controlling the duration of payments. IE's interpretation requires a surviving spouse to survive until the time of each payment in order to receive payment. We find nothing in the agreement suggesting the parties intended section 2.2 to indirectly control the duration of payments.

Furthermore, "because a contract is to be interpreted as a whole, it is assumed ... no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Iowa Fuel & Minerals v. Board of Regents,* 471 N.W.2d 859, 863 (Iowa 1991). Accepting IE's interpretation of the agreement renders several provisions of the agreement superfluous. If section 2.2 mandates IE to stop making payments when there is no living surviving spouse or no living dependent child to receive the payments, the language in sections 2.3, 2.4, and 5.1 which terminates IE's obligation to make payments if an officer dies "leaving no surviving spouse or dependent children" becomes unnecessary.

We hold under the plain language of the agreement Henrietta had a right to receive annual payments equal to seventy-five percent of Duane's salary "for a ten year period." There is no language stating IE's obligation to make payments ended if Henrietta died within that ten year period. At her death, Henrietta's right to receive payments passed to her estate. IE is obligated to continue making payments to Henrietta's estate for a full ten years.

█ In its cross-appeal, the estate contends the district court abused its discretion in denying the estate attorney fees. Under the governing ERISA statute, an award of attorney fees is discretionary with the trial court. 29 U.S.C. § 1132(g)(1)

(1982); *Lawrence v. Westerhaus,* 749 F.2d 494, 495 (8th Cir.1984). Five factors which should be considered by the trial court in exercising that discretion were set forth in *Lawrence.* Those factors are:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal qeustion [sic] regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Lawrence,* 749 F.2d at 496 (quoting *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980)). In the present case, the district court applied the five factors and declined to award attorney fees. We have reviewed the district court's consideration of the five factors and find no abuse of discretion.

We affirm the district court in all respects. Costs of this appeal are taxed to IE.

AFFIRMED.

HABHAB, J., concurs.

SACKETT, J., dissents.

SCHLEGEL, J., takes no part.

SACKETT, Judge (dissenting).

I dissent.

Duane Arnold died leaving a surviving spouse Henrietta and adult children. Henrietta is now deceased and Duane's and Henrietta's adult children are the beneficiaries of Henrietta's estate. The trial court and the majority have determined the estate is entitled to collect under a deferred compensation agreement.

I disagree. If Duane Arnold had died without leaving a surviving spouse, the majority recognizes his adult children would have taken nothing.

I find no rational basis to assume the agreement was intended to provide benefits for these adult children if Arnold predeceased his wife but not if Arnold's wife predeceased him. The agreement clearly is designed to provide an income for Duane's spouse and dependent children. Duane's spouse is dead and his children no longer dependent.

I would reverse and dismiss the estate's claim.