# IN THE COURT OF APPEALS OF IOWA

No. 19-0574
Filed July 22, 2020

**M.W.,**
**on behalf of B.W.,**
      Petitioner-Appellant,

**vs.**

**J.W.,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.

M.W. appeals the denial of a protective order under Iowa Code chapter 236A (2019). **AFFIRMED.**

Alexander S. Momany and Mark D. Fisher of Nidey Fisher Pilkington & Meier, PLC, Cedar Rapids, for appellant.

Jamie A. Splinter of Splinter Law Office, Dubuque, for appellee.

Heard by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

M.W. appeals the denial of a protective order under Iowa Code chapter 236A (2019). M.W. is the mother and J.W. is the father of a minor child, B.W. The mother petitioned for an order prohibiting the father from contacting the child due to alleged sexual abuse. We agree with the district court that the mother failed to prove the father committed sexual abuse against the child by a preponderance of the evidence. Therefore, we affirm.

## I.    Background Facts and Proceedings

On February 21, 2019, the mother filed the petition for relief from sexual abuse. In the petition, she alleged the father sexually abused the child, who was then two-and-one-half years old.[1] On March 15, the matter proceeded to an evidentiary hearing. According to the mother's testimony, she first became alarmed when the child was sitting on the toilet and spontaneously told her "[the father] touches my potty parts." The child "frequently" made concerning statements after that. In another specific instance, the child was using a baby doll in play potty training and said the doll "has a vagina, but I not touch it like [the father] do [sic]." When the child said this, she "extend[ed] one finger and she repeatedly poke[d] back and forth with her arm moving back and forth towards and away from the baby between the legs." Similarly, the mother's friend testified the child told her "it hurt when [the father] changed her diaper," and the child motioned over the top of a doll.

---

[1] The parties divorced prior to filing this petition. While the details of the dissolution are not in the record, the father testified they have "50/50 parenting" of the child. After the mother filed this petition, the father filed a modification petition in a separate proceeding seeking sole legal custody and physical care of the child.

The mother also presented testimony from a therapist who engaged in play therapy with the child at the mother's request. The therapist testified to an interaction during therapy when the child noticed "a cobweb or something" on a toy and said, "I don't like the fuzzies." The therapist asked for clarification, and the child said the father has "fuzzies." When asked where the "fuzzies" are, the child pointed to the crotch of a male doll. When asked if she ever had to touch the "fuzzies," the child answered "yes." The therapist described the interaction as "weird" and the child only showed a fear reaction at the beginning of the interaction. The therapist also testified the child made statements about the father touching her vagina or placing a toy by her vagina, but the therapist determined these statements were inconsistent and not reportable.

The father testified on his behalf. He specifically denied sexually abusing the child or showing his penis to the child. He acknowledged wiping or applying cream on or near her genital area as part of bathroom hygiene. The father introduced medical records from a February 6 well-child visit, which showed no concerns of sexual abuse, and a February 22 sexual-abuse evaluation, which found "no residual physical diagnostic sign of sexual abuse." The father also introduced a video recording of an interview of the child at the Child Protection Center (CPC). In the video, the child says the father "hits" her. The child then makes a spanking motion and refers to her buttocks as her "vagina." The child later says "penis" when discussing body parts and says she does not have a penis. However, she does not respond when asked who has a penis, and she answers "no" when asked if she has ever seen a penis or if anyone has ever shown her a penis. The child also says the father wipes her after using the potty, and she

makes a wiping motion across her buttocks while again referring to the area as her "vagina."

On March 22, the court issued its ruling. The court found the mother failed to prove by a preponderance of the evidence that the father sexually abused the child. The mother appeals. The father requests appellate attorney fees.

## II.     Standard of Review

Chapter 236A is a fairly recent addition to the Iowa Code. *See* 2017 Iowa Acts ch. 121, §§ 4–23. A chapter 236A claim results in a civil proceeding that may be heard at law or in equity with a corresponding standard of review. *See A.N. v. J.G.*, No. 19-0634, 2020 WL 2061881, at *2 (Iowa Ct. App. Apr. 29, 2020) ("Both parties concede the district court ruled on objections as they were made and the action was tried as an action at law; therefore they agree the standard of review should be whether there was substantial evidence supporting the district court's ruling."); *T.D. v. J.P.*, No. 19-0607, 2020 WL 1548516, at *2 (Iowa Ct. App. Apr. 1, 2020) ("Because the district court tried this civil case in equity, our review is de novo.").

Here, there is disagreement as to the standard of review. The mother argues for de novo review. The father argues for review at law such that the district court's findings are binding if supported by substantial evidence. To resolve the dispute, we look to the record. Our review of the record shows the district court tried the case at law. "[W]e will consider and review a case on appeal in the manner it was treated below." *Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982). "Where there is uncertainty, a litmus test we have applied is whether evidentiary objections were ruled on by trial court." *Id.* Here,

the district court ruled on several substantial evidentiary issues, arising from both pre-hearing motions and objections during the hearing. As a result, certain evidence was not admitted into the record. Based on the manner in which the case was tried, we find the proper standard of review to be for errors at law and the district court's findings are binding if supported by substantial evidence. *A.N.*, 2020 WL 2061881 at *2.[2]

## III. Analysis

A person may seek a chapter 236A protective order by filing a petition for relief from sexual abuse. Iowa Code § 236A.3(1) (allowing a parent or guardian to file a petition on behalf of a minor). To obtain a protective order, the person filing the petition must prove sexual abuse by a preponderance of the evidence.[3] *Id.* § 236A.3(2). A "preponderance" is "superiority in weight, influence, or force. The evidence may preponderate, and yet leave the mind in doubt as to the very truth. In such cases the evidence does not fairly set the question at rest, but merely preponderates in favor of that side whereon the doubts have less weight." *Walthart v. Bd. of Dirs.*, 694 N.W.2d 740, 744 (Iowa 2005) (quoting *Ball v. Marquis*, 92 N.W. 691, 692 (Iowa 1902)).

---

[2] Even if we were to find the case was tried in equity such that de novo review was the appropriate standard, it would not change the outcome. Under de novo review, we would give weight to the district court's findings of fact, especially with regard to the credibility of witnesses, but we would not be bound by them. Iowa R. App. P. 6.904(3)(g). Applying that standard of review, our review of the record would result in the same determination made by the district court that the mother did not meet her burden of establishing sexual abuse occurred.

[3] "Sexual abuse" includes a sex act performed with a child. Iowa Code § 709.1(3). A "sex act" includes "[c]ontact between the finger or hand of one person and the genitalia or anus of another person." *Id.* § 702.17. "Not all contact is a 'sex act.' The contact must be between the specified body parts (or substitutes) and must be *sexual* in nature." *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994).

The district court separated the evidence of sexual abuse against this two-year-old child into two distinct allegations: (1) that the child touched the father on or around his pubic area, or "fuzzies"; and (2) that the father touched the child inside or around her vagina. The mother agrees with this framing and asserts the evidence clearly establishes the father sexually abused the child.

The claim that the child touched the father on or around his pubic area is based on the therapist's testimony that the child said she does not like "fuzzies" and then pointed to the crotch of a doll as the location of "fuzzies." This communication is ambiguous at best, and even the therapist described it as "weird." Significantly, no one else observed the child suggesting she touched the father's pubic area. Furthermore, during the CPC interview the child answered "no" when asked if she ever saw a penis, and she seemed generally unsure what a penis is. The district court's finding that the mother failed to prove the child touched the father on or around his pubic area is supported by substantial evidence.

The claim that the father inappropriately touched the child in or around the vagina is based on testimony from the mother's three witnesses. The therapist testified the child said the father touched her vagina. The mother's friend testified the child complained the father hurt her while changing her diaper. The mother testified the child said the father touched her vagina and mimicked digital penetration.

The father acknowledged he touched the child around the vagina, but he asserts he only did so to wipe and apply cream as part of ordinary bathroom hygiene. The district court found his explanation "credible," remarking he "did

seem to act with the appropriate amount of disgust regarding these allegations." His explanation accounts for much of the conduct described by the witnesses, and we note the therapist thought the child's statements about touching her were inconsistent and not reportable as suspected abuse.[4]

The video of the child's CPC interview, which is our only opportunity to directly observe the child, largely refutes the allegations the father inappropriately touched the child. The child struggled to effectively communicate at times during the interview, which is not surprising considering her age. She often gave a one-word response or no response to questions, she referred to her buttocks as her "vagina" multiple times, and she said things that were refuted by credible evidence.[5] We did not observe the fear reaction during this interview that the therapist claimed to have observed during her sessions with the child; instead, the child giggled and called the father "silly" when first asked about him. The only times the child said the father touches her were in the context of bathroom hygiene or potential spanking, which the father denies ever doing. Additionally, the medical record from the February 6 well-child visit—occurring less than two weeks before

---

[4] Iowa Code section 232.69 sets forth a list of classes of persons known as "mandatory reporters." The therapist who testified would be classified as a mandatory reporter pursuant to section 232.69(1). As a mandatory reporter, if the therapist "reasonably believe[d] the child ha[d] been abused" or believed the child had "suffered abuse," she would have been required to submit both an oral and written report of abuse to the Iowa Department of Human Services. *See* Iowa Code §§ 232.69(1), .70. Because the therapist found the child's statements of the father touching her inconsistent, she did not feel obligated to report it, suggesting she did not "reasonably believe" the child had been abused, though she later reported the "fuzzies" interaction.

[5] For example, she said she did not have a bed at the father's house. The father testified she has a bed at her house, which she always uses when she sleeps in her house. He also submitted a photograph of this bed into evidence.

the mother filed the petition—shows no concern for sexual abuse, and the February 22 sexual-abuse evaluation found no evidence of sexual abuse.

The mother maintains the child's communications, as described by her witnesses, were spontaneous, detailed, and coherent so as to be reliable. For purposes of our discussion, we will assume the child said and did the things the mother's witnesses described. However, even with that assumption, we believe the child's communications were open to interpretation and not a clear description of sexual contact between the child and father. We find substantial evidence supporting the district court's determination that the mother did not prove by a preponderance of the evidence that the father sexually abused the child. Accordingly, we affirm the district court's ruling denying the chapter 236A protective order. We deny the father's request for appellate attorney fees, as the father has cited no persuasive authority permitting us to honor that request. *See Bankers Tr. Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (noting the right to attorney fees is statutory both in the trial court and in the appeal).

**AFFIRMED.**

Mullins, J., concurs; Vaitheswaran, P.J., specially concurs.

**VAITHESWARAN, Presiding Judge** (concurring specially).

I specially concur only to highlight my concern with the play therapist's testimony. Under established precedent, an expert may not vouch for the credibility of a child witness. *State v. Leedom*, 938 N.W.2d 177, 192 (Iowa 2020) ("[W]e are committed to the legal principle that an expert witness cannot give testimony that directly or indirectly comments on the child's credibility." (alteration in original) (citation omitted)); *State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014) ("Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster credibility."). The play therapist violated this prohibition when she testified she did not "see cognitively how a two-and-a-half-year-old would be capable of" being coached or conditioned. The district court afforded "little weight" to the therapist's testimony based on other factors. In my view, her improper credibility opinion further diminishes the weight of her testimony.